IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01899-PAB-GPG

ERIC A. HEINRICH,

    Plaintiff,

v.

MASTER CRAFT ENGINEERING, INC., a Michigan corporation,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion for New Trial [Docket No. 323] filed by plaintiff Eric A. Heinrich. Plaintiff's sole basis for the motion is that defendant's closing argument was improper.

**I. BACKGROUND**

Plaintiff brought this products liability case against defendant Master Craft Engineering, Inc. ("Master Craft") and former defendants Auto Center Manufacturing Co. ("Auto Center"), Autocraft Manufacturing Co., Inc. ("Autocraft"), and Jeg's Automotive, Inc. ("Jeg's"). Mr. Heinrich was severely injured while attending an amateur drag race in Mesa County, Colorado.[1] When one of the race cars was spinning its tires in the so-called "burnout" area of the racetrack, a balance weight

---

[1] The Court's September 18, 2015 summary judgment order sets forth the facts in more detail. Docket No. 128.

attached to the vehicle's flexplate[2] flew off and struck plaintiff in the leg. *See* Docket No. 128 at 2. Master Craft manufactured the flexplate in question. *Id*. at 7. Participants in the drag races were required to use a flexplate that complied with Specification 29.1 of the SFI Foundation, Inc. ("SFI Foundation"). *Id*. at 3. The SFI Foundation is a testing body for the performance automobile industry that establishes quality standards and conducts tests on flexplates and other motor vehicle parts that are used in racing. *Id*. at 2. Defendant marked the flexplate in question "NON SFI" to indicate that it was not SFI Foundation approved. *Id*. at 4-5. Master Craft sold the flexplate to Autocraft, who in turn sold it to Jeg's. *Id*. at 7.

After Jeg's sent a comparable model of flexplate, but one that did not have a balance weight, to the SFI Foundation and received SFI certification, Jeg's affixed SFI certification stickers over the words NON SFI on the Master Craft flexplate. Docket No. 128 at 8. The effect of doing so was to conceal the words NON SFI. The person who purchased the flexplate that caused plaintiff's injury testified that he most likely would not have purchased the flexplate if he knew about the NON SFI stamp on it. Before trial, plaintiff reached settlements with Auto Center, Autocraft, and Jeg's. *See* Docket Nos. 200, 275.

---

[2]A flexplate is a steel disk, to which an outer ring gear has been welded, that mounts between the engine crankshaft and the automatic transmission converter. Docket No. 102 at 3, ¶¶ 2-3. Flexplates are designed to, among other things, connect the transmission torque converter and the engine as well as balance engine vibrations. Docket No. 101 at 1 n.1; Docket No. 111-5 at 4, p. 24:1-3; *see, e.g.*, Docket No. 101-5. Externally balanced flexplates have a balance weight welded on one side of the flexplate, Docket No. 101 at 1 n.1; *see, e.g.* Docket No. 101-5, whereas internally balanced flexplates do not.

2

In his amended complaint, plaintiff alleged claims against Master Craft for strict products liability, Docket No. 64 at 18, negligence, *id*. at 19, breach of the implied warranty of merchantability, *id*. at 26, and breach of the implied warranty of fitness for a particular purpose. *Id*. at 27. After a seven-day trial in Grand Junction, Colorado, the jury returned a verdict for Master Craft on all claims. *See* Docket No. 311. On September 8, 2016, plaintiff filed his motion for a new trial. Docket No. 323.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a) provides that "[t]he Court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial may be granted on any error, so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)).

Closing arguments "may be forceful, colorful, or dramatic, without constituting reversible error," *Whittenburg v. Werner Enterprises Inc.*, 561 F.3d 1122, 1133 (10th Cir. 2009) (quoting *Chicago & N.W. Ry. Co. v. Kelly*, 84 F.2d 569, 576 (8th Cir. 1936)); however, "[i]t is not the function of closing argument to debase, degrade or impugn the veracity of a litigant or opposing counsel." *Id*. at 1130 (internal quotation marks omitted). Instead, counsel's remarks during closing arguments are "required to be confined to the evidence admitted in the case and reasonable inferences drawn

therefrom." *Lambert v. Midwest City Mem'l Hosp. Auth.*, 671 F.2d 372, 375 (10th Cir. 1982). Only when counsel "truly overemphasizes an improper argument" during closing is there "the requisite prejudice [to] order a new trial." *King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 591 (10th Cir. 2007).

Plaintiff did not make a contemporaneous objection during defendant's closing argument and acknowledges that the Court therefore applies a "plain error" standard of review. Docket No. 323 at 1; *see also Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962 (10th Cir. 1993) ("[A] party may not wait and see whether the verdict is favorable before deciding to object." (quoting *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 69 (1st Cir.1984))). "The 'plain error' exception in civil cases has been limited to errors which seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'" *Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462, 1464 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1545 (10th Cir. 1991)). Such a substantial adverse impact can result from the cumulative effect of multiple errors that would not individually warrant a new trial. *Whittenburg*, 561 F.3d at 1131.

## III. ANALYSIS

Plaintiff argues that defense counsel made multiple statements during closing arguments that constitute plain error. Docket No. 323 at 2. Specifically, plaintiff contends that defense counsel (1) "made numerous statements about SFI Foundation, Inc. (SFI), for which there is no evidence in the record," *id*. at 2-4; (2) "attempted to wrongfully prejudice the jury against Mr. Heinrich and his claims by making fictional statements about Jegs, for which there is no evidence in the record," *id*. at 5-6;

(3) made "wrongful comments about opposing counsel and Mr. Heinrich," *id*. at 7-8; (4) "misstated the legal doctrine of foreseeability," *id*. at 8-9; and (5) "wrongfully implied that the jury could assess damages against Jegs and Auto Craft." *Id*. at 9. The Court will examine these statements individually and then determine whether those comments found to be improper constitute plain error in the context of the argument as a whole and warrant a new trial. *See, e.g., Whittenburg*, 561 F.3d at 1133 ("In so concluding, however, we underscore that our decision is not based on any one of these factors singly, but rather their combination after considering the argument as a whole."); *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978) ("In reaching this decision, we do not rely on any of the individual instances or types of impropriety. Rather, we have assessed the argument as a whole.").

### A. Statements Regarding SFI

Plaintiff argues that it was improper for defense counsel to apply the "SFI" acronym as an adjective in describing various things. Specifically, plaintiff argues, "[t]here is no such thing, and there was no evidence of, an 'SFI certified race,' an 'SFI certified vehicle,' an 'SFI approved and sanctioned race,' an 'SFI race,' an 'SFI track,' an 'SFI environment,' an 'SFI certified race,' or an 'SFI certified event.'" Docket No. 323 at 4. Plaintiff claims these statements "would lead the jury to wrongly believe that Master Craft is not liable because someone else, such as Jegs, violated SFI rules, regulations or standards pertaining to an SFI vehicle, an SFI certified race, an SFI certified vehicle, an SFI approved and sanctioned race, an SFI track and the like." *Id*. Plaintiff also argues that it was improper for defense counsel to refer to thicknesses of

SFI certified flexplates relative to uncertified flexplates because "[t]here was no evidence of what thickness of flexplate was required to comply with any SFI certification." *Id*.

Defendant argues that these characterizations were fair in light of the evidence presented to the jury about SFI certification and the pre-race inspections done to ensure compliance. Docket No. 326 at 6-7. Defendant also notes that plaintiff responded to these issues in his rebuttal argument. *Id*. at 7 (citing Docket No. 323-1 at 33:17-20 ("You just heard Mr. Sego refer to the following things that don't exist: An SFI event, an SFI certified event, an SFI vehicle, an SFI racetrack. None of those exist.")).

The Court finds that these comments were not prejudicial when viewed in context. In light of the extensive evidence heard by the jury regarding SFI certification, there is little reason to believe that the jury was confused when, for example, defense counsel used the shorthand "SFI certified race," instead of referring (more accurately) to a race where cars were inspected to determine if certain parts were marked with the appropriate SFI certification. Likewise, plaintiff's claim that the jury would think defendant could not be liable if someone else violated SFI rules is contrary to the foreseeability instruction given to the jury, which the jury is presumed to have followed. *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006). As discussed in more detail below, defendant was entitled to argue that it was not foreseeable that a distributor would cover its NON SFI stamp with an SFI certified sticker. *See* Docket No. 304 at 25. Nor is there any reason for the Court to conclude that defense counsel's references to the relative thicknesses of certain flexplates improperly prejudiced the jury or otherwise impacted the fairness and integrity of the trial. Despite plaintiff's argument that this

testimony was not supported by the record, he fails to explain any potential prejudice from these comments.

### B. Statements Regarding Jeg's

Plaintiff also complains about two categories of statements that defendant made about Jeg's: (1) descriptions of Jeg's as a "$250 million company"[3] that is "sophisticated" and (2) claims that Jeg's knew the flexplate had not been "engineered for SFI" and therefore "didn't want to" be at trial because the jury would have been "able to assess punitive damages against them, but they settled." Docket No. 323 at 5-6 (citations and internal quotation marks omitted).

Defendant first argues that these statements "are irrelevant since the jury never reached the issue of apportionment." Docket No. 326 at 7 (citing Docket No. 311). Second, defendant argues that "the record supported the statements made about JEGS and/or [the statements] were within the scope of proper argument." *Id*. In particular, defendant claims that the reference to punitive damages simply articulated the same claims plaintiff had pressed against Jeg's prior to settlement. *Id*. at 8.

The Court finds that defense counsel's assertions that Jeg's is a sophisticated company and knew the flexplate was not engineered to meet the SFI certification were proper arguments based on reasonable inferences from the record evidence. Likewise, defense counsel's arguments that Jeg's was responsible and the jury would have been able to assess punitive damages against Jeg's had it not settled represent reasonable inferences that the jury could have made. *See, e.g.*, Docket No. 64 at 32, ¶ F. On

---

[3] Defense counsel made three such references. Docket No. 323-1 at 4:18, 10:7, 16:7-9.

cross-examination, Mr. Heinrich admitted that he had sought punitive damages against Jeg's and Autocraft. Master Craft could legitimately argue that Jeg's was liable for plaintiff's damages based on an apportionment theory or that Jeg's was an intervening cause of damages such that Master Craft was not liable. *See* Docket No. 128 at 13-24; Docket No. 304 at 25, 35-36, 38. It was proper argument, therefore, for defense counsel to attempt to blame Jeg's.

Defendant does not argue defense counsel's references to Jeg's $250 million value were based on record evidence; instead, defendant states that Jeg's representative "was questioned by plaintiff's counsel about JEGS' annual sales being $250 [million]." Docket No. 326 at 8 n.3. Jeg's representative denied knowing whether that sales figure was accurate.[4] Even had there been evidence of Jeg's valuation or sales, references to the wealth of a party or a financial disparity is always improper argument unless it is relevant to some issue. *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983). However, such references do not necessarily lead to jury prejudice because "each case must turn on its own set of facts to determine whether a jury has been prejudiced." *Id*. (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 (1940) ("*Socony*")).

---

[4]The following portion of the Fed. R. Civ. P. 30(b)(6) deposition testimony of Jeg's was read into the record:

> Q. I was looking at some sales information. What I was reading said your company's sales are about 250 million a year now. Does that sound correct?
>
> A. I don't know. There is, you know, speculation.

Plaintiff argues that the references to Jeg's value warrant a new trial because defense counsel "attempted to prejudice the jurors through repeated false references to Jegs' alleged wealth and sophistication, intimating that since Jegs is rich, and Jegs settled with Mr. Heinrich, the jury should blame Jegs and let Master Craft off the hook." Docket No. 327 at 4-5. The two cases cited by plaintiff where new trials were granted involved different arguments from those made here. In those cases, counsel made sympathetic appeals based on the poverty of their clients relative to their opponents. *See Draper,* 580 F.2d at 95 ("Counsel repeatedly made reference to the wealth of the defendants in contrast to the relative poverty of the plaintiff."); *Hoffman v. Brandt*, 421 P.2d 425, 428 (Cal. 1966) ("the argument of defense counsel was clearly a transparent attempt to appeal to the sympathies of the jury on the basis of the claimed lack of wealth of the defendant.").

In contrast to those cases, defense counsel made no reference to Master Craft's relative poverty or any appeal based on a financial disparity between Jeg's and Master Craft. Instead, defense counsel used the unsupported value of Jeg's as part of an otherwise proper argument that Master Craft would not have expected Jeg's to act as it did, i.e., that its actions were unforeseeable to Master Craft. *See, e.g.*, Docket No. 323-1 at 16:3-9 ("So it's not out of the realm of reasonableness for you to assess damages, if it were, against JEGS or Autocraft, but you can't in good conscience extend that to the manufacturer who puts non-SFI, tells its customer don't use it for racing, and then, as I've said, three or four people down the road a $250 million company decides to tell its employees how to cover that up."). Hence, although defense counsel improperly attempted to portray Jeg's as valuable without record support, there was no "deliberate

attempt by counsel to appeal to social or economic prejudices of the jury, including the wealth or poverty of the litigants." *Hoffman*, 421 P.2d at 428; *see also Socony*, 310 U.S. at 240.

### C. Statements Regarding Plaintiff's Counsel and Plaintiff

Plaintiff argues that it was improper for defense counsel, Mr. Sego, to make repeated references to plaintiff's counsel, Mr. Younger, during closing. Plaintiff identifies no prejudice to plaintiff from these references and fails to provide any basis to grant a new trial based on them. However, plaintiff does identify alleged prejudice in regard to defendant's argument that Mr. Younger should have preserved Mr. Savoya's truck as evidence. Docket No. 323 at 7 (citing Docket No. 323-1 at 24:10-13 ("Mr. Savoya had that vehicle for years after this incident. Mr. Younger never asked him to keep it, never made any efforts to even make sure that he kept it and didn't destroy the vehicle.")). Plaintiff claims that this "wrongfully implied that Mr. Younger had a legal duty" to preserve the evidence and "was a deliberate attempt to have the jury wrongly believe Mr. Younger prevented the jury from considering important evidence." *Id*. Plaintiff cites *Fineman v. Armstrong World Industries, Inc.*, 774 F. Supp. 266, 271-74 (D.N.J. 1991), as authority for this argument.

Nothing approaching the level of attorney misconduct in *Fineman* is alleged to have occurred in this case. Plaintiff's counsel in *Fineman* repeatedly "testified as to his own truthfulness and trustworthiness," repeatedly stated that opposing counsel "concealed information and lied during the course of the trial," and repeatedly "referred to a crime and to a conspiracy in which" opposing counsel was engaged. *Id*. at 271.

Moreover, opposing counsel in *Fineman* objected and plaintiff's counsel was instructed to "refrain from including his personal opinion in his argument," but did not do so. *Id*. at 271.

The Court finds that defendant's arguments about Mr. Younger's failure to preserve the truck did not overemphasize the point and were unlikely to result in prejudice. Defendant argues that the "installation and removal of the flexplate at issue was an important point of evidence in this case, and Mr. Savoya testified that no one asked him to preserve the vehicle." Docket No. 326 at 8. This assertion is supported by record testimony. Indeed, plaintiff challenged the credibility of defendant's expert, Dr. Grantham, based on Dr. Grantham not having inspected Mr. Savoya's vehicle. Plaintiff bore the burden of proving his claims, and it was not improper for defendant to argue that necessary evidence was not presented. Finally, there is no reason to believe that the jury would have understood defense counsel's comments to imply that Mr. Younger had a legal duty he failed to carry out, particularly given plaintiff's questioning of Dr. Grantham.

Plaintiff claims that defense counsel falsely argued plaintiff did not go back to work. Docket No. 323 at 8 (citing Docket No. 323-1 at 31:14). Plaintiff says that it is undisputed that he returned to full-time employment on September 22, 2014. *Id*. Defendant does not dispute this, but claims that testimony showed plaintiff was cleared by his doctor to return to work in January 2012, but did not do so. Docket No. 326 at 9; Docket No. 323-1 at 31:7-12 ("the doctor, Dr. Gebhard, released him at some point to work and he didn't go."). Dr. Purnell testified that he released plaintiff to return to light duty work on May 22, 2013. Plaintiff acknowledged on cross-examination that Dr.

11

Purnell released him to work duties in May 2013, but on his "own tolerances." The statement that plaintiff did not return to work when able is a reasonable inference that plaintiff fails to show affected the fairness of the proceedings.

### D. Statements Regarding Foreseeability

Plaintiff argues that defense counsel misstated the element of foreseeability to the jury. Docket No. 323 at 8. Plaintiff specifically complains of the following statements: (1) "There is no way that a manufacturer should ever be expected to anticipate that its product is going to be sold to its customer," Docket No. 323-1 at 15:13-15; (2) "There is so many people down the line that by the time it gets to the ultimate consumer, Mr. Savoya here, there is no way that Master Craft or any manufacturer should be expected to know that somebody is going to do something like that," *id*. at 15:20-23; (3) "We just can't put that in our society on the manufacturer." *Id*. at 15:23-25. Plaintiff contends that these statements "misrepresent the element of foreseeability by telling the jury that a manufacturer cannot be expected to know its product will be sold to its customer, by wrongfully reciting that the number of persons or companies in the chain of commerce are determinative of foreseeability, and by misstating, with no evidence in the record, that there is a public policy involved in foreseeability." Docket No. 323 at 8-9.

Plaintiff cites no authority for his argument that defense counsel misstated the law regarding foreseeability. However, even if defense counsel's statements regarding foreseeability were incorrect, the Court instructed the jury on foreseeability. *See* Docket No. 304 at 25. The Court also instructed the jury that, if "any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions,

you are, of course, to be governed by the Court's instructions." *Id*. at 2.  The Court presumes that the jurors followed the Court's instruction on foreseeability and that, in the event of a conflict between statements of counsel and the Court's instructions, they followed the Court's instructions.  *See Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1175 (10th Cir. 2003) (citing *Gardner v. Chrysler*, 89 F.3d 729, 737 (10th Cir. 1996)).  The Court rejects plaintiff's argument that he was prejudiced by these statements because plaintiff has not shown the statements were incorrect or led the jury to misapply the law of foreseeability.

### E. Statements Regarding Assessing Damages Against Jeg's and Autocraft

Plaintiff argues that it was improper for defense counsel to argue the jury should assess damages against the former defendants that settled.  Docket No. 323 at 9.  Specifically, plaintiff contends the following statements were improper: (1) "So it's not out of the realm of reasonableness for you to assess damages, if it were, against JEGS or Autocraft, but you can't in good conscience extend that to the manufacturer," Docket No. 323-1 at 16:3-5; (2) "Now, I don't think any of us would oppose an award against Jegs or an award against Autocraft for whatever damages you think are appropriate, but that doesn't mean that Master Craft should be forced to pay any kind of damages based on what Jegs did and what Autocraft did with this party." *Id*. at 32:8-12.  Plaintiff argues that these "statements are unsupported by evidence in the record, violate Colorado law, are prejudicial and confusing to the jury and exceed the bounds of acceptable closing argument."  Docket No. 323 at 9.

The Court finds these arguments did not affect the integrity of the trial. As discussed above, the Court instructed the jury on apportionment of liability among Master Craft, Jeg's, and Autocraft. Docket No. 304 at 35 ("When the sums, if any, representing full compensation are determined, they will be apportioned as the law dictates among defendant and [Jeg's and Autocraft] which have made settlements with the plaintiff.") and at 38. Defendant's use of the terms "damages" and "awards," while imprecise, would reasonably be understood by the jury as references to the apportionment process.

### F. Whether Plain Error Occurred

Among the numerous statements identified by plaintiff, only the three references to Jeg's value were clearly improper. As noted above, these statements were not appeals to relative poverty or class prejudice like those that have been found to warrant a new trial. *See, e.g., Draper,* 580 F.2d at 95. Plaintiff has identified other statements he suggests could have been interpreted by the jury in a way that was prejudicial, but the Court finds that these statements did not substantially affect plaintiff's rights or have a serious impact on the fairness or integrity of the trial. *See Socony*, 310 U.S. at 240 ("And where, as here, the record convinces us that these statements were minor aberrations in a prolonged trial and not cumulative evidence of a proceeding dominated by passion and prejudice, reversal would not promote the ends of justice."). The motion for a new trial will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for New Trial [Docket No. 323] is **DENIED**.

DATED December 28, 2016.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge